UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HEZEKIAH JOEL COLBERT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:17-cv-00109-JMS-MJD |
| ) | |
| RICHARD BROWN Superintendent, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

Once convicted and after exhaustion or waiver of any right to appeal, a defendant is presumed to stand "fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164 (1982).

For the reasons explained in this Entry, the effort of Hezekiah Joel Colbert to show otherwise with respect to his Hendricks County convictions fails. His petition for a writ of habeas corpus will therefore be **denied.** In addition, the Court finds that a certificate of appealability should not issue.

## I. Background

An Indiana jury found Colbert guilty of attempted murder and burglary. The facts and pertinent procedural history were recited in Colbert's direct appeal:

> At the time relevant to this appeal, Jarrod Wilson ("Jarrod") and Misty Wilson ("Misty") had been married, divorced, and remarried. In the summer of 2008, they had been married for seven years, but by the following summer, they were estranged. Misty had started a romantic relationship with her high school boyfriend, Colbert. Jarrod moved out of the marital residence on Murray Street in Indianapolis and began to live at his parents' home on Sycamore Street in

Brownsburg, Indiana. Colbert then moved in with Misty and her children. Although Misty and Colbert had discussed the prospect of marriage, she later informed Colbert that she wanted to reunite her family and return to her husband Jarrod. After learning this, Colbert said that he would kill Jarrod, and began to wear in his waistband a butcher knife that he had taken from Misty's house. In August of 2009, Jarrod went to Misty's home to help her repair plumbing, and met Colbert at the house.

On August 28, 2009, three days after Colbert threatened to kill Jarrod, Misty saw Colbert carrying the butcher knife. That same day, Jarrod returned from work to his parents' house. While on the computer, he received an instant message from Colbert, who was using Misty's account. The message stated, "Ha ha, nice try. She's playing both of us." Tr. p. 404. Jarrod did not respond, but did inform Misty about the message. Jarrod then opened the garage door in anticipation of his parents' return home, and fell asleep on the living room couch.

Jarrod awoke as Colbert was stabbing him. Colbert wrapped his arm around Jarrod from behind, held him down, and stabbed him repeatedly in the side and chest. Jarrod broke free from Colbert and ran to the other side of the table in front of the couch and "[g]ot a good look" at Colbert, who was only a few feet away. He saw the knife Colbert was holding, which he recognized as a butcher knife from Misty's house, and also noticed that Colbert had a tattoo on his neck. Jarrod managed to escape to a neighbor's house, where the neighbor called the police and an ambulance. Jarrod was taken to Wishard hospital in Indianapolis, where he underwent emergency surgery to repair his injuries, which included wounds to his chest, abdomen, stomach, and diaphragm. Jarrod lost over one liter of blood and has suffered from long-term loss of feeling in his fingers. Jarrod told the police investigating the stabbing that Colbert was his attacker. When the police went to Colbert's residence, he crashed his van into a neighbor's garage while attempting to flee.

The State subsequently charged Colbert with Class A felony attempted murder, Class A felony burglary, Class B felony aggravated battery, and Class C felony battery. The State also alleged that Colbert was an habitual offender. During the jury trial, the State called as a witness Sergeant Jennifer Barnes ("Sgt. Barnes"), who worked for the cyber crimes unit of the Indiana State Police. Sgt. Barnes testified that she conducted a forensic search of the computer at Misty's home and found evidence that someone had used the Yahoo! maps website to look for directions from Misty's house, where Colbert had been staying, to Jarrod's parents' house, where Jarrod was attacked. Colbert objected to this testimony on hearsay grounds, but the trial court overruled his objection.

> The jury ultimately found Colbert guilty as charged and found him to be an habitual offender. At the sentencing hearing, the trial court vacated Colbert's convictions for aggravated battery and battery, and reduced the burglary conviction from a Class A felony to a Class C felony, all on double jeopardy grounds. The court then concluded that the aggravating factors outweighed the mitigating factors and sentenced Colbert to forty-eight years for the attempted murder conviction, enhanced by thirty years for the habitual offender determination, and to a consecutive twelve years for the burglary conviction, for an aggregate sentence of ninety years.

*Colbert v. State,* 2010 WL 5456977, *1–2 (Ind.Ct.App. Dec. 30, 2010), *reh'g denied, trans. denied.*

In the foregoing appeal, the Indiana Court of Appeals rejected Colbert's arguments that: (1) the trial court erred by admitting evidence regarding an internet search for directions from Colbert's house to the victim's house; and (2) his aggregate sentence of ninety years was inappropriate. The denial of post-conviction relief, in which Colbert claimed that he had been denied ineffective assistance from both his trial counsel and counsel in his direct appeal, was affirmed in *Colbert v. State*, 2016 WL 7398208 (Ind.Ct.App. 2016), *transfer denied,* 80 N.E.3d 181 (Ind. 2017).

Colbert now seeks relief pursuant to 28 U.S.C. § 2254(a). The respondent opposes issuance of the writ Colbert seeks, arguing against it in part based on the merits of Colbert's claims and in part based on procedural default. The action is fully at issue and the record has been appropriately expanded.

## II. Applicable Law

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). The

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, became effective on April 24, 1996, and governs the habeas petition in this case because Colbert filed his petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 337 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners.").

> Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, *Burt v. Titlow,* 571 U.S. ___, 134 S. Ct. 10, 15–16, 187 L.Ed.2d 348, 2013 WL 5904117 at *4 (U.S. Nov. 5, 2013), federal law erects a high deferential standard . . . for claims that a state court erred. Federal habeas relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).

*Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). An "unreasonable" application of federal law is one "'so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Harper v. Brown*, 865 F.3d 857, 860 (7th Cir. 2017) (citing *Ward v. Neal*, 835 F.3d 698, 703 (7th Cir. 2016), and quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The petitioner carries the burden of proof." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

In addition to the foregoing substantive standard, "[i]t is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). "Procedural default is a

defense to federal habeas corpus review." *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

> Procedural default can occur in several ways, "but two are paradigmatic." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). A state prisoner can procedurally default a federal claim if he fails to "fairly present" it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Id.* Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Id.* (quotation marks omitted).

*Clemons v. Pfister,* 845 F.3d 816, 819 (7th Cir. 2017) (citing *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)).

Procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances. "A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson v. Foster,* 786 F.3d 501, 504 (7th Cir. 2015)(internal citations omitted). "Under this cause-and-prejudice test, a cause is defined as 'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding.' Prejudice means 'an error which so infected the entire trial that the resulting conviction violates due process.'" *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (internal citation omitted). The second exception, known as the fundamental miscarriage of justice exception, requires a petitioner to show that he is actually innocent. He must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518,

537 (2006) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998).

### III. Discussion

Colbert's habeas claims are the same as asserted in his direct appeal and in his appeal from the denial of his petition for post-conviction relief. The first of these is that the trial court erred by admitting evidence regarding an internet search for directions from Colbert's house to Jarrod's parents' house. *Colbert v. State*, 2010 WL 5456977, * 2 ("During the jury trial, the State called as a witness Sergeant Jennifer Barnes ('Sgt.Barnes'), who worked for the cyber crimes unit of the Indiana State Police. Sgt. Barnes testified that she conducted a forensic search of the computer at Misty's home and found evidence that someone had used the Yahoo! maps website to look for directions from Misty's house, where Colbert had been staying, to Jarrod's parents' house, where Jarrod was attacked. Colbert objected to this testimony on hearsay grounds, but the trial court overruled his objection."). Colbert claimed that the evidence regarding the online search for directions was inadmissible hearsay.

The evidentiary ruling of the trial court which was challenged in Colbert's direct appeal does not support a cognizable claim under 28 U.S.C. § 2254(a). This claim, therefore, is not cognizable here. *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000) (a federal habeas courts may only review a state evidentiary ruling if it is erroneous and is of a constitutional magnitude, *i.e.,* the state court's ruling must be so prejudicial as to compromise the habeas petitioner's due process right to a

fundamentally fair trial creating the likelihood that an innocent person was convicted). Even were it otherwise, moreover, this claim was not included in Colbert's petition to transfer in his direct appeal and thus has been procedurally defaulted for purposes of federal habeas review. *See Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001)(petitioner's failure to present issue to Indiana Supreme Court constituted procedural default); *Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir. 1996) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court.").

The second claim imported here from Colbert's direct appeal is his argument that his sentence was excessive. The issue of sentencing within the parameters of state law is ordinarily outside the realm of federal habeas review, *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997), and this case is no exception. He is not entitled to habeas corpus relief based on this claim.

Colbert's remaining claims are that he was denied the effective assistance of counsel both at trial and in his direct appeal. Although this is a single claim, *see Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005)), each specification of ineffectiveness must be fully exhausted in the state courts. *See Campbell v. Burris*, 515 F.3d 172, 185 (3d Cir. 2008) ("[I]neffective assistance of counsel claims based on different acts or omissions are discrete claims and must each be exhausted."); *Kelley v. Secretary for Dep't of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004)("[T]o preserve a claim of ineffective assistance of counsel, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.").

The ineffective assistance of counsel arguments in Colbert's action for post-conviction relief were these: He alleged that his trial counsel had rendered ineffective assistance by failing to object to the following evidence: (1) two police in-car videos (State's Exhibits 122 & 123); (2) Jarrod's testimony regarding his identification of Colbert; (3) four letters written by Colbert to Misty and her daughter (State's Exhibits 115–118); and (4) the State's cross-examination of Colbert during the jury trial regarding his prior burglary conviction and the State's evidence during his habitual offender enhancement phase, the accumulation of which he claimed resulted in a "transference of [the] burden of proof" in the habitual offender phase. As to his arguments regarding representation by appellate counsel claim, Colbert alleged that his counsel had rendered ineffective assistance by: (1) failing to raise an appellate issue regarding his Fifth Amendment right to remain silent; (2) failing to raise an appellate issue regarding the admission into evidence of the four letters written by Colbert to Misty and her daughter; and (3) failing to file a petition for rehearing and a petition to transfer. *Colbert v. State*, 2016 WL 7398208, at * 2-3. Specifications of ineffectiveness not supported by cogent argument were not addressed by the Indiana Court of Appeals and are considered procedurally defaulted here. *See Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993). Colbert has not shown the existence of circumstances permitting him to overcome the consequences of his procedural default.

*Strickland v. Washington,* 466 U.S. 668, 684 (1984), supplies the clearly established Federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney

who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals recognized the *Strickland* standard. *Colbert v. State*, 2016 WL 7398208, at *5. With respect to the specifications of ineffective assistance of counsel at trial, the Indiana Court of Appeals issued the following evaluation:

> To demonstrate ineffective assistance of trial counsel for failure to object, a petitioner must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. Colbert, however, has failed to do so for each of his claims. Colbert has failed to specify what objection his trial counsel should have made to the evidence he now challenges, and he has failed to show that any such objections would have been sustained. Furthermore, Colbert has made absolutely no showing that there is a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different.

*Id.* at *6 (internal citation omitted). With respect to the specifications of ineffective assistance of counsel on appeal, the Indiana Court of Appeals found:

> the argument most resembling a cogent argument is Colbert's claim that Appellate Attorney Manning rendered ineffective assistance by failing to raise an appellate

> issue on direct appeal. Specifically, Colbert contends that Appellate Attorney Manning should have raised an appellate challenge to the trial court's denial of his mistrial motion made after a police officer testified and referenced Colbert's right to remain silent.
> . . . . Colbert has not shown prejudice on this or any of his ineffective assistance of appellate counsel claims. . . . . Colbert, however, has not shown that there is a reasonable probability that the result of his direct appeal would have been different had his appellate counsel raised the mistrial issue. Indeed, his brief contains a rambling recitation of evidence from trial and general references to cases, and it does not specifically show the prejudice necessary to meet the burden of his ineffective assistance of appellate counsel claim.

*Id.* at *7 (footnotes omitted).

These assessments--resting in each instance on the prejudice prong of a claim of ineffective assistance of counsel--are compatible with the federal *Strickland* standard. And because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

### IV. Conclusion

Colbert's convictions withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to them. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). This Court has carefully reviewed the state record in light of Colbert's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.") (citing *Harrington,* 562 U.S. at 98). "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a

writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Colbert to relief in this case.

Having applied the appropriate standard of review, and having considered the pleadings and the expanded record, Colbert's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

### V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Colbert has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: 9/22/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

HEZEKIAH JOEL COLBERT
993110
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov